IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| J.P., as Next Friend of A.S.W.; and A.S.W., Individually,<br><br>               Plaintiffs,<br><br>      vs.<br><br>STATE OF NEBRASKA; YOUTH REHABILITATION AND TREATMENT CENTER AT GENEVA; NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES OF THE STATE OF NEBRASKA; DANNETTE SMITH, Chief Executive Officer of the Department of Health and Human Services, Individually; TREVOR SPIEGEL, Individually; MARK LABOUCHARDIERE, Individually; and DAN SCARBOROUGH, Individually,<br><br>             Defendants. | **4:22-CV-3095**<br><br>**MEMORANDUM AND ORDER ON MOTION TO DISMISS** |

## I.   INTRODUCTION

Plaintiffs J.P., as next friend of A.S.W., and A.S.W., individually, have sued the State of Nebraska, the Youth Rehabilitation and Treatment Center at Geneva (YRTC-Geneva), the Nebraska Department of Health and Human Services (NDHHS), collectively referred to herein as the "State Defendants," as well as Danette Smith, Trevor Spiegel, Mark LaBouchardiere, and Dan Scarborough, in their individual capacities, collectively referred to herein as the "Individual Defendants." Filing 1-1 at 2–5. In their Complaint, Plaintiffs bring a claim for violations of the Eighth and Fourteenth Amendments against the Individual Defendants, a claim under the Americans with Disabilities Act (ADA) against the State Defendants, and a claim under the

1

Rehabilitation Act against the State Defendants.[1] Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Filing 11. For the reasons stated herein, the Court grants Defendants' Motion. Nevertheless, Plaintiffs shall have fourteen (14) days from the date of this Order to file an Amended Complaint correcting the defects identified in this Order.[2]

## II.   BACKGROUND

In their Complaint, Plaintiffs allege that A.S.W. was a juvenile female during the events leading up to this suit. Filing 1-1 at 2. According to Plaintiffs, A.S.W. suffers from several physical and psychological disorders that substantially limit her in one or more of her major life activities. Filing 1-1 at 3. In January of 2017, at the age of fourteen, A.S.W. was committed to YRTC-Geneva. Filing 1-1 at 3. As to each Defendant, Plaintiffs allege,

> At all times relevant, Defendants, and each of them, because of their respective positions and job duties within the facility knew or should have known that A.S.W. had the above diagnoses and trauma history. Or else, they acted with deliberate indifference to the conditions of the facility on A.S.W.

Filing 1-1 at 3. The Complaint further alleges that

> Defendants, and each of them, subjected A.S.W. to uninhabitable living conditions, inappropriate solitary confinement, failed to provide adequate mental health care, failed to hire, train, or supervise staff in adequate number, failed to accommodate A.S.W.'s disabilities in violation of the [ADA] and the Rehabilitation Act, and otherwise denied A.S.W. the services guaranteed to them under Nebraska state law.

---

[1] Plaintiffs' Complaint states that the ADA and Rehabilitation Act claims are made against the State Defendants and the "Individual Defendants in their official capacities." Filing 1-1 at 21, 23. This contrasts with the beginning of the Complaint, however, which states that the Individual Defendants are sued in their individual capacities only. Filing 1-1 at 4–5. While it is possible to sue state officials in their official capacity for violating the ADA and the Rehabilitation Act, *see Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001), it is not possible to do so against state officials in their individual capacities. *See Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014). Given the ambiguity of the Complaint, the Court shall treat the ADA and Rehabilitation Act claims as made only against the State Defendants. *See Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n.3 (8th Cir. 1984) ("If plaintiff wishes to sue defendants in both capacities, the following language would suffice: Plaintiff sues each and all defendants in both their individual and official capacities."); *cf. Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (cautioning that, when a plaintiff wishes to sue the defendants in both capacities, Eighth Circuit Court of Appeal's precedent "require[s] more than ambiguous pleading").

[2] The Court notes that this case has been consolidated with case no. 4:21-cv-3315. This order only governs the complaint in case no. 4:22-cv-3095.

Filing 1-1 at 5. The Complaint also references a purported investigative report that found that YRTC-Geneva leadership failed "to plan, to problem solve, and to dedicate the resources necessary to provide the legally required care for the youth at YRTC-Geneva." Filing 1-1 at 4. On around August 7, 2019, A.S.W. transferred to Boys Town in Douglas County, supposedly because of YRTC-Geneva's poor condition. Filing 1-1 at 10, 12.

Most of the allegations in the Complaint outline purported issues at YRTC-Geneva generally rather than what occurred to A.S.W. specifically. As to allegations related to A.S.W., the Complaint claims that "Defendants" confined A.S.W. in solitary confinement frequently while she resided at YRTC-Geneva; subjected A.S.W. to unsanitary and unsafe conditions at YRTC-Geneva; failed to mentally evaluate A.S.W. before placing her in solitary confinement; failed to provide regular individualized treatment to A.S.W.; failed to institute programming for A.S.W.; and failed to provide adequate education services. Filing 1-1 at 12–17. The Complaint launches these allegations at Defendants collectively and does not explain which Defendant did or failed to do what act.

On April 18, 2022, Plaintiffs filed suit in Nebraska state court against Defendants for violating the Eighth and Fourteenth Amendments to the United States Constitutions, the ADA, and the Rehabilitation Act. Filing 1-1. Among their desired relief is a request for an injunction "ordering Defendants to provide for appropriate and necessary healthcare . . . and to promulgate policies to ensure the provision of healthcare services to juvenile individuals with disability who are under the care, control, and custody of the [NDHHS]." Filing 1-1 at 20–21, 22–24. Plaintiffs also ask the Court for declaratory judgment that Defendant's policies and practices subjected A.S.W. to unconstitutional and unlawful conditions. Filing 1-1 at 20, 22, 24. Defendants removed

the action to this Court on May 20, 2022. On June 29, 2020, Defendants filed their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Filing 11.

### III.   ANALYSIS

#### A.  Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not

parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

### B.  Rule 12(b)(1) Standards Concerning Lack of Standing

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *Sanzone v. Mercy Health*, 954 F.3d 1031, 1046 (8th Cir. 2020), *as corrected* (Apr. 9, 2020) (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)). "Where a plaintiff lacks standing, the court has no subject matter jurisdiction." *Brooks v. City of Des Moines, Iowa*, 844 F.3d 978, 979 (8th Cir. 2016). "When a motion to dismiss is made on standing grounds the standing inquiry must, as a prerequisite, be done in light of the factual allegations of the pleadings." *Sandzone*, 954 F.3d at 1046 (quoting *Mineta*, 495 F.3d at 570).

The Eighth Circuit Court of Appeals has summarized the Supreme Court's explanation of the showing required to establish standing as follows:

5

> The irreducible constitutional minimum of standing contains three requirements. First and foremost, there must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . .

*Agred Found. v. United States Army Corps of Engineers*, 3 F.4th 1069, 1073 (8th Cir. 2021)

(quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–104 (1998)). "A plaintiff who

brings suit in federal court has the burden of establishing standing." *Id.*

## C.  Constitutional Claims

The Court begins with Plaintiffs' constitutional claims under the Eighth and Fourteenth

Amendment to the United States Constitution made pursuant to 42 U.S.C. § 1983. Plaintiffs'

Eighth Amendment claim accuses Defendants of being "deliberately indifferent" to an excessive

risk of harm to A.S.W. and for using "excessive force in various forms." Filing 1-1 at 19. In their

claim under the Fourteenth Amendment, Plaintiffs allege that Defendants' use of solitary

confinement did not relate to any legitimate government objective and, therefore, was "inherently

punitive and well outside the range of acceptable professional practices." Filing 1-1 at 19–20.

Defendants argue that Plaintiffs fail to state a claim because the allegations in the Complaint do

not show direct or personal involvement by Defendants or that Defendants were aware of A.S.W.'s

medical needs or the alleged constitutional violations. Filing 12 at 7–14.

The Court first notes that it harbors doubt that the Eighth Amendment applies in this case.

"[T]he Eighth Amendment applies only to convicted prisoners . . . ." *Jackson v. Stair*, 944 F.3d

704, 709 (8th Cir. 2019). It "prohibits the infliction of 'cruel and unusual punishments' on those

convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). It is usually via a conviction

from which the Eighth Amendment's proscription against "cruel and unusual punishment" springs. *See Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (noting that "an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction" and, therefore, the Eighth Amendment did not apply). Nowhere in the Complaint do Plaintiffs allege that A.S.W.'s placement at YRTC-Geneva resulted from a process akin to a criminal conviction rather than one associated with civil confinement. Indeed, the Complaint implies that A.S.W.'s placement resulted from an adjudication finding her to be "an incapacitated person." Filing 1-1 at 2. Nevertheless, the Court will not dismiss Plaintiffs' Eighth Amendment claim on this basis because Defendants do not raise this argument.

Moreover, what is important to the Court for the purposes of the present Motion to Dismiss is that, under both Plaintiffs' Eighth Amendment and Fourteenth Amendment claims, Plaintiffs must allege personal involvement in the purported constitutional violations. *See Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 688 (8th Cir. 2019) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007))). In the context of supervisors, such as the Individual Defendants in this case, "a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution." *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Further, whether made under the Eighth Amendment or the Fourteenth Amendment, Plaintiffs' constitutional claims related to the conditions of A.S.W.'s confinement or the failure to

7

provide for her medical needs requires alleging sufficient facts to make it plausible that the Individual Defendants were deliberately indifferent. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) ("In order to establish a constitutional violation [under the Fourteenth Amendment], [the plaintiffs] must show . . . the [defendants] actually knew of but disregarded, or were deliberately indifferent to, [the plaintiffs'] health or safety . . . . (second and fourth alterations in original)); *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 614 (8th Cir. 2022) (explaining, for an Eighth Amendment claim related to medical care against defendants without medical training, that the plaintiff must show that the defendants acted with "deliberate indifference by 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). The Court therefore turns to whether the Complaint plausibly alleges the Individual Defendants' personal involvement of the alleged constitutional violations and that they acted or failed to act with deliberate indifference.

As outlined in the Complaint, the Individual Defendants are supervisory officials working at either NDHHS or YRTC-Geneva. Filing 1-1 at 4–5. The Complaint is sparse with the actions taken by the Individual Defendants or how they had knowledge of the conditions at YRTC-Geneva from which A.S.W. suffered, however. Rather, the Complaint proceeds in conclusory fashion, alleging that based upon Defendants' position as supervisors they "acted with deliberate indifference to the conditions of [YRTC-Geneva] on A.S.W." Filing 1-1 at 3; *see Richardson*, 2 F.4th at 1068 (holding that "conclusory statements" do not make a claim plausible). This is insufficient to plausibly allege that Defendants "knew of the need" for A.S.W.'s care or protection. *See Ruseness*, 31 F.4th at 614. The Complaint provides no plausible basis for any of the Individual Defendants' knowledge of A.S.W.'s medical needs, cruel and unusual treatment of A.S.W., or the

8

purported unsanitary conditions at YRTC-Geneva from which A.S.W. suffered. *See Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (noting that a complaint must allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face" (quoting *Braden*, 588 F.3d at 594)). Without specific allegations related to each Defendants' knowledge of the unconstitutional conditions at YRTC-Geneva or A.S.W.'s need for treatment, the Complaint fails to raise Plaintiffs' constitutional claims "above the speculative level" and, therefore, it does not "support a reasonable inference that [Defendants] are liable." *Richardson* F.4th at 1068.

Beyond a total lack of specificity as to each Individual Defendants' knowledge, the Complaint also falls short of alleging that any of the Individual Defendants engaged in unconstitutional conduct toward A.S.W. *See Z.J by & through Jones*, 931 F.3d at 688; *Morris*, 954 F.3d at 1060. The Complaint grounds the constitutional violations chiefly in the unsanitary and unsafe conditions at YRTC-Geneva, A.S.W.'s placement in solitary confinement, and the failure to provide treatment to A.S.W. Filing 1-1 at 12–17. But the Complaint is wholly silent on the Individual Defendant's personal involvement in these alleged violations. The fact that the Individual Defendants held a supervisory role is insufficient. *See Buckley v. Hennepin Cnty.*, 9 F.4th 757, 764 (8th Cir. 2021) (holding that supervisors "can be held personally liable under § 1983 only 'when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference towards the violation.'" (quoting *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995))). At most, the Complaint alleges that Defendants Smith, Scarborough, and Spiegel conducted "huddle calls" twice a week, Filing 1-1 at 8, but does not explain what these defendants discussed in these calls or how they have anything to do with the constitutional violations suffered by A.S.W. Indeed, some of the allegations related to the

conditions at YRTC-Geneva occurred after A.S.W. had left. *See* Filing 1-1 at 10–11 (stating that A.S.W. left YRTC-Geneva on or about August 7, 2019, and then alleging incidents occurring afterwards). Because the Complaint rests solely on the Individual Defendants' positions as supervisors, it fails to state that any defendant was personally involved in any constitutional violation.

The Complaint fails to plausibly allege that Defendants were deliberately indifferent or that they were directly involved in the violations of A.S.W.'s constitutional rights. Instead, the Complaint is merely consistent with Defendants' liability, which, as a matter of law, is insufficient to state a plausible claim for relief. *See Christopherson*, 33 F.4th at 499.   Accordingly, the Court dismisses Plaintiffs' constitutional claims.

### D.   ADA and Rehabilitation Act Claims

Defendants also seek dismissal of Plaintiffs' ADA and Rehabilitation Act Claims, which allege that Defendants discriminated against A.S.W. on the basis of her disabilities. Filing 1-1 at 22, 24. According to Defendants, Plaintiffs fail to plausibly allege that Defendants acted with discriminatory intent or that Defendants denied A.S.W. benefits based on her disabilities. Filing 12 at 19–23.

A claim under Title II of the ADA requires a plaintiff to allege:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) (alterations in original) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)); *see also I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 972 (8th Cir. 2017) (explaining that Title II of the ADA

and Section 504 of the Rehabilitation Act "provide[] the same rights, procedures, and remedies against discrimination." (quoting *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 812 (8th Cir. 2007))).

The Court agrees with Defendants that Plaintiffs have failed to plausibly allege that any "exclusion, denial of benefits, or other discrimination was by reason of [A.S.W.'s] disability." *See Rinehart*, 964 F.3d at 688. Plaintiffs do not plausibly allege that Defendants placed A.S.W. in solitary confinement or denied her any benefits because of her disability. Indeed, there is a total absence of any allegations of discrimination on the basis of A.S.W.'s disability in the Complaint. Therefore, the Court grants Defendants' Motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims.

### E.  Punitive and Emotional Distress Damages

In addition to their request to dismiss Plaintiffs' ADA and Rehabilitation Act claims outright, Defendants also argue that Plaintiffs fail to state a claim for emotional and punitive damages under the ADA and Rehabilitation Act because those damages are unavailable under both acts. The Court agrees.

The Supreme Court in *Barnes v. Gorman* outlined the interplay between the various anti-discrimination statutes and the damages available as follows:

> Section 203 of the ADA declares that the remedies, procedures, and rights set forth in § 505(a)(2) of the Rehabilitation Act shall be the remedies, procedures, and rights this subchapter provides for violations of § 202. Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available for violations of § 504. Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, which prohibits racial discrimination in federally funded programs and activities.

*Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (cleaned up). Congress enacted Title VI of the Civil Rights Act "[p]ursuant to its authority to 'fix the terms on which it shall disburse federal money." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569 (2022) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). The Supreme Court has characterized accepting federal funds as akin to a contract between the recipient and the federal government, and, therefore, employs a "contract-law analogy" to define "the scope of conduct for which funding recipients may be held liable for money damages." *Id.* at 1570 (quoting *Barnes*, 536 U.S. at 186). Accordingly, the remedies available under § 202 of the ADA and § 504 of the Rehabilitation Act depend on if Congress "unambiguously" imposed "a condition on the grant of federal moneys" such that a "prospective funding recipient" would "have been aware that it would face such liability." *Id.* (quoting *Pennhurst*, 451 U.S. at 17).

In *Barnes v. Gorman*, the Supreme Court determined that "punitive damages . . . may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Barnes*, 536 U.S. at 189. Similarly, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court held that the Rehabilitation Act does not permit recovery of emotional distress damages. *See Cummings*, 142 S. Ct. at 1571–72. Although the Supreme Court did not directly address § 202 of the ADA in *Cummings*, its holding implicitly found that emotional distress damages are unavailable under that section. *See Barnes*, 536 U.S. at 185 (noting that the remedies under § 202 of the ADA, § 504 of the Rehabilitation Act, and Title VI of the Civil Rights Act are "coextensive"); 42 U.S.C. § 12133 (stating that the remedies in § 505(a)(2) of the Rehabilitation Act "shall be the remedies, procedures, and rights" for individuals alleging disability discrimination under § 202 of the ADA). Accordingly, the Court grants Defendants' Motion to

Dismiss Plaintiffs' claims for punitive and emotional distress damages under the ADA and the Rehabilitation Act.

### F.  Injunctive and Declaratory Relief

Finally, Defendants argue that Plaintiffs have no legally cognizable claim for injunctive or declaratory relief. Filing 12 at 25–27. Defendants emphasize that the Complaint states that A.S.W. transferred to Boys Town in Douglas County "on or about" August 8, 2019, and that there is no allegation YRTC-Geneva is currently in operation. Filing 101 at 10; Filing 12 at 25. Therefore, Defendants argue, Plaintiffs lack standing to pursue injunctive and declaratory relief.

In their Complaint, Plaintiffs ask the Court for an injunction "ordering Defendants to provide for appropriate and necessary healthcare . . . and to promulgate policies to ensure the provision of healthcare services to juvenile individuals with disabilities who are under the care, control, and custody of the [NDHHS]." Filing 1-1 at 20–21, 22–24. Plaintiffs also ask the Court for declaratory judgment that Defendants' policies and practices subjected A.S.W. to unconstitutional and unlawful conditions. Filing 1-1 at 20, 22, 24. The Court agrees with Defendants that, under the current allegations in the Complaint, Plaintiffs cannot bring these claims for injunctive or declaratory relief.

Official-capacity suits do "not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). "[D]eclaratory relief is limited to prospective declaratory relief." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019). Furthermore, because A.S.W. is no longer subject to the conditions at YRTC-Geneva and there are no allegations that YRTC-Geneva is even open, there is nothing for the Court to enjoin. *See Hamner v. Burls*, 937 F.3d 1171,

1175 (8th Cir. 2019). Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' requests for injunctive and declaratory relief.

### G. Request for Leave to Amend

At the end of their brief in opposition to Defendants' Motion to Dismiss, Plaintiffs request that the Court grant them leave to file an amended complaint if the Court grants Defendants' Motion to Dismiss. Filing 13 at 20–21. Defendants oppose this request because Plaintiffs did not include a copy of a proposed pleading as requested by Nebraska local rule 15.1. Filing 14 at 2; *see* NECivR 15.1. Although Defendants are technically correct, the Court has "considerable discretion" in enforcing its local rules. *Buffets, Inc. v. Leischow*, 732 F.3d 889, 895 (8th Cir. 2013).

It is within the court's discretion to grant post-dismissal leave to amend. *See City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 558 (8th Cir. 2021). The court may deny leave if amending a complaint would be futile—meaning that it would not survive a motion to dismiss—or because the moving party failed to offer a proposed amended complaint. *See id.* Denial is also appropriate when a party has failed multiple times to adequately plead its claims. *See Knowles*, 2 F.4th at 758.

The Court will grant Plaintiffs' request for leave to amend in part. Plaintiffs have not yet amended their complaint. The ends of justice will be served by permitting Plaintiffs to file an amended complaint. That being said, however, the Court will not grant Plaintiffs leave to include in the amended complaint their requests for punitive and emotional distress damages under the ADA and the Rehabilitation Act. As a matter of law, these damages are unavailable to Plaintiffs under these acts. Therefore, no amendment would allow these damages to survive a motion to dismiss. Likewise, any declaratory relief that Defendants violated or subjected A.S.W. to

unconstitutional conditions is unavailable as a matter of law,[3] and no amendment could overcome a motion to dismiss on that basis. Accordingly, the Court grants Plaintiffs fourteen (14) days leave to file an amended complaint, except for any claim for punitive or emotional distress damages under the ADA and the Rehabilitation Act or for declaratory relief that Defendants in their official capacity violated or subjected A.S.W. to unconstitutional conditions.[4]

## IV.   CONCLUSION

Plaintiffs have failed to state a claim for relief, but the Court will grant them leave to file an amended complaint. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 11, is granted; and

2. Plaintiffs shall have fourteen (14) days from the date of this order to file an amended complaint subject to the conditions outlined in this order.

Dated this 6th day of October, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

---

[3] It is conceivable that A.S.W. could allege a plausible claim for injunctive relief, so the Court will not preclude Plaintiffs from including such a claim in an amended complaint at this time. Although the Court provides leave to amend the remaining claims, this conclusion should not be read to conclude the Court believes any certain claim will ultimately be allowed to proceed under applicable law.
[4] The Court requests that Plaintiffs in their amended complaint expressly and clearly state whether the Individual Defendants are sued in their official or individual capacities, or both.